EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| LSREF2 Island Holdings, Ltd. Inc.<br><br>        Peticionaria<br><br>        v.<br><br>Ashford R.J.F. Inc.; Sucesión de Flavio Enrique Hernández Ramírez compuesta por su esposa Mercedes Ramírez; John Doe y Richard Roe como posibles herederos desconocidos de la Sucesión Flavio Enrique Hernandez Ramírez<br><br>        Recurridos | 2019 TSPR 42<br><br>201 DPR ____<br><br>Certiorari |

Número del Caso:    CC-2017-492


Fecha: 7 de marzo de 2019


Tribunal de Apelaciones:

        Región Judicial de Carolina y Guayama, Panel IX


Abogados de la parte peticionaria:

        Lcdo. Roberto Cámara Fuertes
        Lcdo. Luis G. Parrilla Hernández
        Lcda. Suleicka Tulier Vázquez


Abogado de la parte recurrida:

        Lcdo. Hernán E. Jorge Rosado


Materia:  Obligaciones y Contratos; Sucesiones: Acreedor puede ejecutar una acreencia de los bienes del caudal hereditario del deudor, que garantizó una obligación individualmente, aunque algunos de los bienes hayan sido gananciales.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| LSREF2 Island Holdings, Ltd. Inc.<br><br>Peticionaria<br><br>v.<br><br>Ashford R.J.F. Inc.; Sucesión de Flavio Enrique Hernández Ramírez compuesta por su esposa Mercedes Ramírez; John Doe y Richard Roe como posibles herederos desconocidos de la Sucesión Flavio Enrique Hernandez Ramírez<br><br>Recurridos | CC-2017-492 | *Certiorari* |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 7 de marzo de 2019.

Este caso nos permite examinar el alcance de la responsabilidad patrimonial que tienen los bienes de un deudor ante el incumplimiento de sus obligaciones. Específicamente, debemos dilucidar si un acreedor puede ejecutar una acreencia de los bienes del caudal hereditario de un deudor que -estando casado bajo el régimen de la Sociedad Legal de Gananciales (SLG)- garantizó una obligación individualmente, aunque algunos de los bienes a ejecutarse hayan sido gananciales. Luego de examinar el asunto detenidamente, contestamos la interrogante en la afirmativa.

A continuación, exponemos los hechos que dieron génesis a la controversia de autos.

I

Ashford R.J.F. Inc. (Ashford) suscribió un Contrato de Préstamo (*Loan Agreement*) con FirstBank.[1] Flavio Enrique Hernández Ramírez (señor Hernández Ramírez o causante) garantizó personal y solidariamente dicho préstamo mediante la firma de una Garantía Continua (*Continuing Guaranty*).[2] Ante su incumplimiento, FirstBank demandó a Ashford y al señor Hernández Ramírez en Cobro de Dinero y Ejecución de Hipoteca. El 7 de agosto de 2012, el foro primario notificó una Sentencia en la que declaró Con Lugar la Demanda. En la Sentencia, cuya validez y vigencia es incontrovertida, se determinó que Ashford y el señor Hernández Ramírez pactaron que responderían solidariamente de cualquier deficiencia si el producto de la venta de las propiedades hipotecadas era insuficiente para satisfacer la deuda, la cual ascendía a más de seiscientos cincuenta mil dólares ($650,000.00).

Luego de emitida la Sentencia, el Tribunal de Primera Instancia autorizó dos (2) sustituciones de parte. La primera se debió a que LSREF2 Island Holdings, Ltd. Inc. ("Island Holdings") adquirió todo el interés que FirstBank tenía en el préstamo en controversia. La segunda sustitución se efectuó a raíz del fallecimiento del señor Hernández Ramírez. Este fue sustituido por su Sucesión. Con motivo de la

---

[1] Petición de *Certiorari*, Apéndice, págs. 50-63.

[2] Íd., págs. 86-87.

sustitución, la Sra. Mercedes Ramírez Rodríguez, viuda del señor Hernández Ramírez, fue emplazada por sí y como miembro de la aludida Sucesión. Los demás herederos, Flavio Enrique, Mercedes Ramona, María Elena, Laura, Erasmo y Fernando, todos hijos del causante y de apellidos Hernández Ramírez (en unión a Ashford y a la señora Ramírez Rodríguez, "los recurridos"), se sometieron a la jurisdicción del Tribunal de Primera Instancia mediante un escrito en el que solicitaron término para deliberar si aceptaban la herencia a beneficio de inventario, conforme al Artículo 964 del Código Civil de Puerto Rico, 31 LPRA sec. 2801.[3]

Así las cosas y luego de que se ejecutaran los bienes hipotecados, el foro primario emitió una Orden de Ejecución de Sentencia Suplementaria Enmendada. Mediante dicho dictamen se ordenó el embargo e incautación de cualquier mueble o inmueble perteneciente a los recurridos; así como los fondos que obraran en cualquier cuenta de banco, cooperativa o institución financiera; y las sumas de dinero, valores, instrumentos negociables o cuentas por cobrar que estuvieran bajo la custodia de terceros, incluyendo salarios hasta un máximo de veinticinco por ciento (25%). También ordenó a los recurridos abstenerse de enajenar, vender o transferir cualquier bien o activo hasta que la peticionaria cobrase lo adeudado.

---

[3] El 4 de abril de 2016, los hijos del causante presentaron un escrito ante el foro primario en que aceptaron la herencia a beneficio de inventario y sometieron un Informe de Activos y Pasivos del Caudal Hereditario. Íd., págs. 205-210.

Así las cosas, la señora Ramírez Rodríguez solicitó la nulidad de la Ejecución de Sentencia. Planteó que, si bien fue emplazada, desconocía bajo qué precepto legal podía ejecutarse la Sentencia contra ella de la manera en que se pretendía hacer. Adujo que ni ella ni la SLG que formó con el señor Hernández Ramírez fueron parte del préstamo objeto de este caso. Además, expresó que los bienes del caudal postganancial indiviso estaban confundidos con los bienes de la herencia del causante. A raíz de lo anterior, el Tribunal de Primera Instancia invalidó la Orden de Ejecución de Sentencia Suplementaria respecto a la viuda y paralizó el trámite de ejecución por sesenta (60) días para que la viuda informara al Tribunal sobre los bienes de la herencia del causante que estaban confundidos con su patrimonio indiviso.

Posteriormente, los demás herederos del señor Hernández Ramírez solicitaron la nulidad de la Sentencia y de la Orden de Ejecución de Sentencia Suplementaria en cuanto a la SLG constituida por el señor Hernández Ramírez y su viuda. Cimentaron su postura en que el caudal hereditario del causante estaba compuesto por bienes adquiridos durante su matrimonio con la señora Ramírez Rodríguez con dinero y bienes gananciales. De esa forma, plantearon que la Sentencia objeto de este pleito no podía ser satisfecha con bienes de la SLG ni del caudal hereditario, ya que la SLG habida entre el señor Hernández Ramírez y la señora Ramírez Rodríguez nunca fue emplazada. Island Holdings se opuso a lo solicitado por los herederos. Primero, aclaró que la Orden de Embargo

en controversia no aplicaba a los bienes de la señora Ramírez Rodríguez, quien nunca se obligó en el Contrato de Préstamo objeto de este caso. Segundo, sostuvo que era improcedente dilatar el proceso de Ejecución de Sentencia amparándose en la existencia de una SLG que dejó de existir al fallecer el señor Hernández Ramírez.

Luego de estudiar los planteamientos de las partes, el foro primario emitió una Resolución en la que concluyó que no procedía la nulidad de la Sentencia debido a que el señor Hernández Ramírez venía obligado a responder en su carácter personal por la deuda contraída. En desacuerdo, los herederos presentaron una Solicitud de Reconsideración.

Así las cosas, el 7 de septiembre de 2016 el foro primario notificó una Resolución en Reconsideración. Determinó que la peticionaria tenía derecho a continuar con el trámite suplementario de Ejecución de Sentencia únicamente contra los bienes privativos del causante, mas no contra los bienes de la cónyuge supérstite ni contra los bienes que pertenecieron a la SLG por ellos compuesta.

Inconforme, el 23 de septiembre de 2016 la peticionaria presentó una Solicitud de Reconsideración Parcial. Sostuvo que la mitad de los bienes que pertenecieron a la SLG antes aludida eran parte del caudal hereditario, por lo que procedía la liquidación de esa sociedad antes que la división, liquidación y partición de la herencia. De esa forma, arguyó que, con posterioridad a la liquidación de la SLG y la partición de los bienes al patrimonio de cada ex

cónyuge, procedía que se le permitiera cobrar su acreencia de los bienes que formaran parte del caudal relicto del causante. Mediante Resolución notificada el 10 de noviembre de 2016, el Tribunal de Primera Instancia denegó la Solicitud de Reconsideración Parcial de la peticionaria.

En desacuerdo, el 9 de diciembre de 2016 la peticionaria acudió al Tribunal de Apelaciones mediante Petición de *Certiorari*. Planteó que el foro primario erró al concluir que los bienes que una vez formaron parte de la referida SLG estaban fuera del alcance del acreedor, incluso luego de la disolución y liquidación de la Comunidad de Bienes que surgió con posterioridad al fallecimiento del señor Hernández Ramírez.

El 28 de marzo de 2017 el Tribunal de Apelaciones expidió el auto solicitado y confirmó el dictamen del foro primario. Concluyó que tanto los bienes de la señora Ramírez Rodríguez como los de la SLG estaban fuera del proceso de Ejecución de Sentencia. Determinó que los únicos bienes contra los que podía proceder la peticionaria para cobrar el resto de su acreencia eran aquellos bienes privativos del causante, por lo que aquellos bienes que no tuviesen tal carácter estaban fuera del alcance de la peticionaria **"independientemente de que luego de disuelta la SLG la participación del señor Hernández [Ramírez] pase a formar parte del caudal hereditario"**.[4] El Tribunal de Apelaciones basó su determinación en WRC Props., Inc. v. Santana, 116

---

[4] Íd., pág. 13.

DPR 127 (1985). La peticionaria presentó una Moción de Reconsideración, la cual fue denegada mediante Resolución de 16 de mayo de 2017.

Aun insatisfecha, el 15 de junio de 2017 la peticionaria presentó una Petición de *Certiorari* ante este Tribunal y esgrimió el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Apelaciones al determinar que los bienes que formaron parte de la Sociedad Legal de Gananciales quedan fuera del alcance del acreedor luego de la disolución y liquidación de dicho régimen matrimonial.

El 1 de diciembre de 2017 expedimos el auto de *certiorari* solicitado. Ambas partes presentaron sus alegatos. La peticionaria concede que fue el señor Hernández Ramírez, en su carácter personal, quien se obligó solidariamente en el Contrato de Préstamo objeto de esta causa. Por ende, queda claro que la señora Ramírez Rodríguez no se obligó a satisfacer la deuda que se pretende cobrar, amén de que la deuda nunca fue ganancial. A continuación, exponemos el derecho aplicable a la controversia de autos.

II

A.

En nuestra jurisdicción, la SLG concluye al disolverse el matrimonio, ya sea por muerte de unos de los cónyuges, divorcio o nulidad. Arts. 95, 1315 y 1328 del Código Civil, 31 LPRA secs. 301, 3681 y 3712; BL Investment Inc. v. Registrador, 181 DPR 5, 13 (2011). Al cesar la SLG se crea una Comunidad de Bienes Postganancial, la cual existe hasta

que sea liquidada o dividida. Muñiz Noriega v. Muñoz Bonet, 177 DPR 966, 982-983 (2010).

Actualmente, la Comunidad de Bienes Postganancial carece de regulación específica en nuestro Código Civil. No obstante, en reiteradas ocasiones, hemos indicado que dicha comunidad está sujeta a las normas establecidas en los Arts. 326 al 340 del Código Civil de Puerto Rico, 31 LPRA secs. 1271-1285, a falta de contrato o disposiciones especiales. BL Investment Inc. v. Registrador, supra, pág. 14. Véanse, además, Montalván v. Rodríguez, 161 DPR 411, 421-422 (2004); Metropolitan Marble Corp. v. Pichardo, 145 DPR 607, 612 (1998); Calvo Mangas v. Aragonés Jiménez, 115 DPR 219, 228 (1984). Ahora bien, se distingue por ser una comunidad en que sus comuneros ostentan una cuota abstracta sobre la antigua masa ganancial y no una cuota concreta sobre cada bien que la compone. BL Investment Inc. v. Registrador, supra, pág. 14. Véase, además, R. Rosario Cortés, La comunidad de bienes antes y después de disolverse el matrimonio: Sociedad Legal de Gananciales y comunidad de bienes postganancial, 44 Rev. Jur. U.I.P.R. 67, 73-74 (2009-2010). Esto hace que se asemeje a la Comunidad Hereditaria. M. Albaladejo, Comentarios al Código Civil y compilaciones forales, 2da ed., Madrid, Ed. EDERSA, 1999, T. XVIII, Vol. II, págs. 587-591; A. de Cossio y Corral, Tratado práctico y crítico de Derecho Civil, Madrid, Ed. Instituto Nacional de Estudios Jurídicos, 1963, pág. 248.

Cónsono con lo anterior, cuando surge una Comunidad Postganancial "ante el fallecimiento de uno de los cónyuges, el patrimonio en liquidación tiene dos (2) titulares: el cónyuge superviviente y los herederos del cónyuge fallecido". BL Investment Inc. v. Registrador, supra, pág. 16. Véanse, además, J.L. LaCruz Berdejo y otros, Elementos de Derecho Civil, 4ta ed., Barcelona, Ed. Bosch, 1997, T. IV, pág. 353; J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1985, T. IV, pág. 164. Los herederos reciben la misma porción que hubiese recibido su causante de la comunidad disuelta. BL Investment Inc. v. Registrador, supra, pág. 16.

Antes de liquidar la Comunidad de Bienes Postganancial es necesario determinar cuáles bienes son privativos y cuáles son gananciales. Montalván v. Rodríguez, supra, pág. 457. De ese modo, se identifican los bienes privativos que corresponden a cada cónyuge y se establecen las responsabilidades imputables al caudal común, así como aquellas que se hayan utilizado para beneficio exclusivo de uno de los comuneros. Íd. No es hasta la liquidación de la Comunidad Postganancial, proceso que requiere la formación de un inventario, el avalúo y tasación de los bienes, así como el pago de las obligaciones de la extinta sociedad de gananciales, que se puede dividir y adjudicar la ganancia o sobrante entre los excónyuges o sus correspondientes herederos. BL Investment Inc. v. Registrador, supra, págs. 15-16. Véase, además, Muñiz Noriega v. Muñoz Bonet, supra;

Janer Vilá v. Tribunal Superior, 90 DPR 281, 301-302 (1964). Después de las deducciones para satisfacer las obligaciones de la sociedad extinta y los gastos por pérdida o deterioro de los bienes gananciales, el remanente constituye el capital de la comunidad de bienes. Art. 1320 del Código Civil, 31 LPRA sec. 3695. Este sobrante se divide por mitad entre los excónyuges o sus respectivos herederos. Art. 1322 del Código Civil, 31 LPRA sec. 3697.

Cuando coincidan una Comunidad Postganancial y una Comunidad Hereditaria, procede liquidar primero la Comunidad Postganancial y luego la Comunidad Hereditaria. Méndez v. Ruiz Rivera, 124 DPR 579, 587 (1989); E. González Tejera, Derecho sucesorio puertorriqueño, San Juan, Ed. de la Universidad de Puerto Rico, 2001, Vol. I, pág. 491.

B.

La herencia consiste en "todos los bienes, derechos y obligaciones de una persona, que no se extingan por su muerte". Art. 608 del Código Civil de Puerto Rico, 31 LPRA sec. 2090. Al fallecer el causante, los herederos lo suceden en todos sus derechos y obligaciones. Art. 210 del Código Civil de Puerto Rico, 31 LPRA 2092. El contenido de los dos (2) artículos precitados nos ha llevado a concluir que en nuestro derecho sucesorio la herencia se compone de las relaciones jurídicas activas y pasivas que componían el patrimonio de la persona a la fecha de su muerte. Sucesión Álvarez Crespo v. Pierluisi, 150 DPR 252, 266 (2000). Véanse, además: Art. 601 del Código Civil, 31 LPRA sec. 2083; J.R.

Vélez Torres, Curso de Derecho Civil: Derecho de Sucesiones, 2da ed. rev., San Juan, Ed. Rev. Jur. U.I.A., 1992, T. IV, V. III, pág. 8. De ahí que en Puerto Rico, como norma general, "la posición jurídica del causante se [mantiene] en lo posible inalterable, con la colocación del heredero en su lugar". Torres, Torres v. Torres Serrano, 179 DPR 481, 497 (2010). Véanse, además: Feliciano Suárez, Ex parte, 117 DPR 402, 413 (1986); Robles Menéndez v. Tribunal Superior, 85 DPR 665, 672 (1962); Arroyo v. Fernández, 68 DPR 514, 517 (1948). Al resolver a principios del siglo pasado Sucesión Dávila v. El Registrador de la Propiedad, 15 DPR 669, 673 (1909), reconocimos que la sustitución del causante por su heredero constituye una continuación de su personalidad.

Los derechos y obligaciones patrimoniales son transmisibles por herencia, salvo aquellos que, por sus características, disposición de ley o pacto sean intransmisibles. Torres, Torres v. Torres Serrano, supra, pág. 497, Arts. 549, 1065 y 1209 del Código Civil de Puerto Rico, 31 LPRA secs. 1931, 3029 y 3374. Dicho de otro modo, "generalmente los derechos y las obligaciones contractuales asumidas por una persona no se extinguen con su muerte; más bien, éstas encuentran continuidad en la sucesión". Torres, Torres v. Torres Serrano, supra, pág. 497. Véase, también, Art. 600 del Código Civil, 31 LPRA sec. 2082. De esa forma, en armonía con el principio "antes pagar que heredar", una liquidación del caudal hereditario requiere que, previo a dividirse y adjudicarse la herencia, se proceda al cobro de

créditos, al pago de deudas y, una vez efectuado y determinado el sobrante, se dividan y adjudiquen los bienes entre los partícipes. J. Cuevas Segarra y A. Román García, Derecho sucesorio comparado: Puerto Rico y España, San Juan, Pubs. JTS, 2003, pág. 395. Es decir, primero se paga y luego se hereda, por lo que, hasta que no se paguen las deudas del caudal, los herederos no tienen derecho preferente a parte alguna de la herencia. Ruiz v. Ruiz, 74 DPR 347, 351 (1953); Ex Parte: Cautiño, 51 DPR 475, 483 (1937). En palabras del Prof. González Tejera

> Para lograr una partición de herencia viable, es menester llevar a cabo varias operaciones previas, entre las cuales podemos mencionar la determinación del monto total del activo y **del pasivo sucesorio**, lo que requiere a su vez un inventario de todos los activos y pasivos, con su correspondiente avalúo. Una vez se obtenga este inventario, **se procede a cobrar créditos y pagar deudas en ese mismo orden.** Concluida la etapa de liquidación, si el saldo final es positivo, se procede entonces a fijar el haber de cada heredero, de acuerdo con el texto del testamento o la declaratoria de herederos, en la proporción que fije aquél o la ley.

E. González Tejera, op cit., pág. 400. (Énfasis suplido). Véase, además, E. Martínez Moya, El Derecho Sucesorio Puertorriqueño, 67 Rev. Jur. UPR. 1, 42 (1998).

Cónsono con lo anterior, el Art. 1035 del Código Civil de Puerto Rico faculta a los acreedores a oponerse a que se efectúe la partición de la herencia "hasta que se pague o afiance el importe de su crédito". 31 LPRA 2931. Esta disposición del Código Civil coloca de manifiesto la preferencia del derecho de los acreedores sobre el de los herederos.

Por otra parte, el heredero que acepte la herencia a beneficio de inventario no queda obligado a pagar las cargas o deudas de la herencia con sus propios bienes más allá de donde alcancen los bienes del caudal hereditario; conserva los derechos y acciones que tenía contra el difunto; y no se confunden sus bienes particulares con los de la herencia. Art. 977 del Código Civil, 31 LPRA sec. 2814. La aceptación a beneficio de inventario constituye una aceptación expresa que separa los patrimonios y limita la responsabilidad del heredero por las deudas y cargas de la herencia a los activos de la sucesión. González Campos v. González Mezerene, 139 DPR 228, 239-240 (1995); Lequerique v. Sucn. Talavera Crespo, 132 DPR 297, 304-305 (1992).

Sobre el particular, el Prof. González Tejera expresa que la separación de patrimonios ordenada por el Artículo 977 del Código Civil rige mientras ocurre la administración que precede a la aceptación a beneficio de inventario. González Tejera, op cit., pág. 200. Durante ese tiempo, el heredero responde solamente con los bienes del caudal. Ahora bien, una vez realizada la partición, el heredero beneficiario responderá con sus bienes hasta el valor de lo recibido porque en esa etapa ocurre la confusión de patrimonios. Íd.

### III

### A.

La peticionaria aduce que el Tribunal de Apelaciones erró al confirmar la determinación del foro primario en

cuanto a que un acreedor de una deuda privativa no puede cobrar su acreencia de bienes que una vez formaron parte de la SLG, incluso luego de que esta se extingue con la muerte de uno de los cónyuges y es liquidada. Sostiene que tiene derecho a continuar el proceso de Ejecución de Sentencia Suplementario sobre los bienes del caudal hereditario de la Sucesión del causante. Le asiste la razón. La determinación del foro primario, avalada por el Tribunal de Apelaciones, que limitó los bienes sujetos a embargo es contraria a varios preceptos de nuestro Código Civil. Veamos.

En primer lugar, la decisión recurrida extendió la vida de la SLG más allá de lo que indica nuestro Código Civil. Es claro que en nuestra jurisdicción la SLG concluye al disolverse el matrimonio por muerte de uno de los cónyuges. Arts. 95, 1315 y 1328 del Código Civil, _supra_. Este error conceptual fue el que llevó a los foros recurridos a aplicar incorrectamente nuestro precedente _WRC Props., Inc. v. Santana_, 116 DPR 127 (1985).

En _WRC Props., Inc. v. Santana_, supra, resolvimos que no procedía imponer responsabilidad solidaria a la SLG y a uno de los cónyuges que no firmó un Contrato de Arrendamiento que posteriormente fue incumplido. Al dilucidar los hechos particulares de ese caso, expresamos que el

> acreedor WRC estaba consciente de la existencia de la sociedad de gananciales. Al aceptar únicamente la firma de Santana limitó los términos de su garantía a la sola persona del cónyuge compareciente. Sus propios actos constituyen un impedimento para dirigir la causa de acción contra dicha entidad conyugal y la señora Cruz. _Íd._, págs. 135-136.

Al interpretar conjuntamente los Arts. 1308 y 1313 del Código Civil, expresamos que para aplicar la presunción de carácter ganancial de una deuda e imponer responsabilidad individual primaria y solidaria a los cónyuges, es necesario que la deuda u obligación sirva a un interés de la familia y no esté predicada en un ánimo fraudulento u oculto de perjudicar a uno de los cónyuges. 31 LPRA secs. 3661 y 3672; WRC Props., Inc. v. Santana, supra, pág. 135. También indicamos que "la carga de la prueba reposa en el cónyuge o la sociedad de gananciales que niegue responsabilidad". Íd. Ahora bien, aclaramos que la carga puede invertirse si el cónyuge que niega responsabilidad demuestra *prima facie* no haber recibido beneficio alguno de la obligación contraída. Íd. De esa manera, "una vez controvertida la presunción, la responsabilidad de la Sociedad Legal de Gananciales es subsidiaria, previa excusión de bienes conforme [al] Art. 1310 del Código Civil, 31 LPRA sec. 3663". Íd.

Aplicar a este caso de forma automática lo resuelto en WRC Props., Inc. v. Santana, supra, fue incorrecto ya que entre ambos hay una diferencia importantísima: **la existencia de la SLG como parte en el pleito**. Distinto a WRC Props., Inc. v. Santana, supra, en el caso de autos no existe una SLG, ya que esta se extinguió al fallecer el señor Hernández Ramírez. Además, el carácter privativo de la deuda que nos ocupa es incontrovertido. La parte peticionaria, acreedora de la obligación objeto de esta causa, concede que la deuda es privativa y no ganancial. Precisamente, por esa razón el

acreedor no demandó ni emplazó a la viuda señora Ramírez Rodríguez ni a la SLG cuando presentó la Demanda original. Consecuentemente, erraron los foros recurridos al aplicar la norma de WRC Props., Inc. v. Santana, supra, al caso de autos.

B.

Aclarado ese punto, procede discutir si en nuestro ordenamiento jurídico la peticionaria tiene alguna limitación al momento de reclamar a la Comunidad Hereditaria del causante la obligación que originó esta controversia. Para dilucidar esa interrogante, es necesario abundar sobre el proceso de liquidación de las comunidades de bienes que coexisten en este caso: la Comunidad Postganancial y la Comunidad Hereditaria.

Con la muerte del señor Hernández Ramírez, surgió una Comunidad Postganancial entre la señora Ramírez Rodríguez y la Sucesión del causante. Muñiz Noriega v. Muñoz Bonet, supra, págs. 982-983; BL Investment Inc. v. Registrador, supra, pág. 16. En esta comunidad cada comunero tiene una cuota abstracta sobre la antigua masa ganancial. BL Investment Inc. v. Registrador, supra, pág. 16; R. Rosario Cortés, op cit., págs. 73-74. Una vez liquidada la Comunidad Postganancial, lo que incluye la formación de un inventario, el avalúo y tasación de los bienes, así como el pago de las obligaciones de la extinta SLG, se divide y adjudica el sobrante entre la señora Ramírez Rodríguez y la Sucesión del causante. BL Investment Inc. v. Registrador, supra, págs.

15-16; Janer Vilá v. Tribunal Superior, supra, págs. 301-302.

Disuelta la Comunidad Postganancial y distribuidos los bienes sobrantes, procede realizar un trámite similar con la herencia del causante. Méndez v. Ruiz Rivera, supra, pág. 587; E. González Tejera, op cit., pág. 491. Es necesario fijar el monto total del activo y del pasivo de la Comunidad Hereditaria con su correspondiente avalúo debido a que las obligaciones contractuales asumidas por una persona no se extinguen con su muerte, sino que encuentran continuidad en su sucesión. E. González Tejera, op cit., pág. 400; Torres, Torres v. Torres Serrano, supra, pág. 497.

Las obligaciones se extinguen, *inter alia*, por el pago o cumplimiento. 31 LPRA sec. 3151. Una deuda se considera pagada cuando se entrega íntegramente la cosa objeto de obligación o cuando se hace totalmente la prestación en la que consistía la obligación. 31 LPRA sec. 3161. En el caso de autos tanto la validez de la obligación que se pretende satisfacer como su cuantía son hechos incontrovertidos. La controversia entre las partes reside en determinar cuáles bienes del patrimonio del causante responden de dicha obligación. Para resolver esa controversia, basta recordar que el Art. 1811 del Código Civil, supra, establece que todo deudor responde de sus obligaciones "con todos sus bienes presentes y futuros". 31 LPRA 5171.

El señor Hernández Ramírez no limitó su responsabilidad a bienes determinados. De haberlo querido así, debió hacerlo

constar al suscribir el Contrato de Préstamo que originó este caso. Véase, por ejemplo, Campos del Toro v. Ame. Transit Corp., 113 DPR 337 (1982) (Decretamos la validez de un contrato en que el deudor limitó su responsabilidad al inmueble objeto de gravamen). Sin embargo, el *Continuing Guaranty* que el señor Hernández Ramírez firmó al garantizar el préstamo de autos revela que se obligó solidariamente con todo su patrimonio, presente y futuro. Véase, Apéndice, págs. 86-87.

Según mencionamos anteriormente, en esta etapa adquiere relevancia el reconocido principio "antes pagar que heredar". Hasta que no se paguen las deudas del caudal hereditario, los herederos del señor Hernández Ramírez no tienen derecho preferente a parte alguna de la herencia. Ruiz v. Ruiz, supra, pág. 351; Ex Parte Cautiño, supra, pág. 483. Incluso, la peticionaria puede oponerse a que se parta la herencia hasta que se pague o afiance el importe de su crédito. Art. 1035 del Código Civil, supra.

A raíz del Derecho esbozado y del análisis que antecede, es insoslayable concluir que los herederos del señor Hernández Ramírez deben responder de todas las deudas del causante, que no se extinguiesen con su muerte, como lo es la del caso de autos. Del expediente surge que estos aceptaron la herencia a beneficio de inventario.[5] Por tal razón, su responsabilidad es limitada y solo responden a la peticionaria con los bienes del caudal hereditario.

---

[5] Íd., págs. 205-210

Así las cosas, una vez se liquide la Comunidad Postganancial habida entre la señora Ramírez Rodríguez y la Sucesión del causante y se sepa con certeza los activos de la comunidad de herederos del señor Hernández Ramírez, procede permitir la Orden de Embargo contra los bienes de la Comunidad Hereditaria, independientemente de que alguno de los bienes que la componen hubieran pertenecido en algún momento a la Sociedad Legal de Gananciales.

## IV.

Por los fundamentos que anteceden, revocamos la Sentencia del Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia a fines de que en un término razonable de tiempo: (1) proceda con los trámites pertinentes a la liquidación de la Comunidad Postganancial habida entre la señora Ramírez Rodríguez y la Sucesión del señor Hernández Ramírez y una vez esto ocurra; (2) emita una Orden de Embargo contra todos los bienes que pertenezcan a la Sucesión del Sr. Flavio Enrique Hernández Ramírez, hasta satisfacer la acreencia de LSREF2 Island Holdings, Ltd.

Se dictará Sentencia de conformidad.


                                    Mildred G. Pabón Charneco
                                    Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| LSREF2 Island Holdings, Ltd. Inc.<br><br>        Peticionaria<br><br>        v.<br><br>Ashford R.J.F. Inc.; Sucesión de Flavio Enrique Hernández Ramírez compuesta por su esposa Mercedes Ramírez; John Doe y Richard Roe como posibles herederos desconocidos de la Sucesión Flavio Enrique Hernandez Ramírez<br><br>        Recurridos | CC-2017-492 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 7 de marzo de 2019.

Por los fundamentos que anteceden, revocamos la Sentencia del Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia a fines de que en un término razonable de tiempo: (1) proceda con los trámites pertinentes a la liquidación de la Comunidad Postganancial habida entre la señora Ramírez Rodríguez y la Sucesión del señor Hernández Ramírez y una vez esto ocurra; (2) emita una Orden de Embargo contra todos los bienes que pertenezcan a la Sucesión del Sr. Flavio Enrique Hernández Ramírez, hasta satisfacer la acreencia de LSREF2 Island Holdings, Ltd.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo.  La Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Cólon Pérez concurren con el resultado sin opinión escrita.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo